

# The Attorney General of Texas

July 26, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gary Thompson
Chairman
County Affairs Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No.  JM-184

Re:  Whether revenues received
from a hotel occupancy tax may
be used to make improvements
to a county golf course

Dear Representative Thompson:

You have asked whether article 1269j-4.1, V.T.C.S., authorizes El Paso County to use revenues from a hotel occupancy tax to purchase golf carts or to finance general improvements for a county-operated golf course. We first conclude that, because it is a city tax, the hotel occupancy tax authorized by article 1269j-4.1 does not apply to El Paso County; moreover, we conclude that, although there is a county hotel occupancy tax that does apply to El Paso County, it does not authorize the county to use revenues from the tax to purchase golf carts or to finance general improvements for its golf course.

The legislature has enacted several hotel occupancy taxes. Section 156.051 of the Tax Code was enacted in 1959; it provides for a state hotel occupancy tax. See Acts 1959, 56th Leg., 3rd C.S., ch. 1, at 187. All revenues from this tax are deposited in the state treasury to the credit of the general revenue fund. Tax Code §156.251. The remaining hotel occupancy taxes are levied by local governments: some by counties and some by cities. Each of these local tax laws authorizes the local government to use the revenues from the tax to finance certain specified county or city projects.

The county hotel occupancy tax is authorized by article 2372d-8, V.T.C.S. Section 1 of article 2372d-8 defines the counties to which the article applies:

> Section 1. This article applies only to counties with a population of more than 2,000,000, according to the most recent federal census and to counties that border the Republic of Mexico with a population of more than 90,000, according to the most recent federal census, excluding counties which contain three or more cities with populations of more than 17,500, according to the most recent federal census.

El Paso is such a county and it is, therefore, authorized to levy a hotel occupancy tax.

This office has previously discussed the proper disposition of revenues from a city's hotel occupancy tax.   In Attorney General Opinion H-209 (1974), the city of Temple asked whether it could use revenues collected under article 1269j-4.1 to contract with the Temple Cultural Activities Center for the provision of cultural services to the community.   The opinion deemed the use to be outside of those specifically permitted by the statute:

> However, we do not believe the permissible uses of occupancy tax revenues include general efforts to support the arts.   It may be that the programs you describe, in certain situations, could have the ancillary effect of contributing to a "solicitation and operating program to attract conventions and visitors," but as you state in your inquiry, their main purpose is the development of programs in the arts for the general public of central Texas.   Before Hotel Occupancy Tax funds could be used to purchase services, activities or programs for the development of the arts, we believe they would need to be directly related to the attraction of conventions or tourists.

Attorney General Opinion H-209 (1974).   The county hotel occupancy tax was intended to raise revenues to support projects that encourage conventions and tourism.   Section 2 of article 2372d-8 is, in fact, titled "Improvements to Attract Visitors and Tourists."   Section 6 of article 2372d-8 specifies how revenues from the county hotel occupancy tax may be used.   The specification in section 6(a) of article 2372d-8 is exclusive:

> Sec.  6.  (a)  The revenue derived from any occupancy tax authorized or validated by this article may only be used for:
>
> (1)  the acquisition of sites for and the construction, improvement, enlarging, equipping, repairing, operation, and maintenance of public improvements such as civic centers, civic center buildings, auditoriums, exhibition halls, coliseums, and stadiums, including sports and other facilities (either or all) that serve the purpose of attracting visitors and tourists to the county . . . .  (Emphasis added).

According to section 6(a), the county's disposition of hotel occupancy tax revenues will be authorized by the statute only if both of the following are true   (1)  the revenues will be spent for a "public improvement" such as those listed in section 6(a)(1); and (2) this improvement will serve the purpose of attracting conventions and tourists to the county.  In deciding whether general improvements to a county golf course may be classified as "public improvements," we must invoke standard rules of statutory construction.  The rule of ejusdem generis applies to enumerations -- lists of specific terms which are preceded or followed by a more general term associated with the list of specifics.  The scope of the general term, "public improvements," is therefore defined by the non-exhaustive though limiting list of terms which follow it.  See Amplifone Corporation v. Cameron County, 577 S.W.2d 567 (Tex. Civ. App. - Corpus Christi 1979, no writ).

We note that each of the public improvements listed in section 6(a)(1) is a building.  The only phrase in the list which could conceivably embrace a county golf course is "stadiums, including sports and other facilities."  However, "the cardinal rule of statutory construction is to ascertain the legislative intent in enacting the statute."  Faulk v. State, 608 S.W.2d 625 (Tex. Crim. App. 1980).  The clear intent of article 2372d-8 is to raise local revenues for projects which will attract visitors and tourists.  The list of suggested projects in section 6(a)(1) of article 2372d-8 contemplates "sports and other facilities" which will draw large numbers of ticket- buying spectators to the county, e.g. arenas or pavilions where spectator events such as races or other competitive games could be held.  A county golf course is not such a place.  We conclude, therefore, that a county could not use revenues from a hotel occupancy tax to build a county golf course; accordingly, we conclude that the county may not use these revenues to finance general improvements to an existing county golf course.

### S U M M A R Y

The county of El Paso may not use revenues from a county hotel occupancy tax collected pursuant to article 2372-8, V.T.C.S., to purchase golf carts or finance general improvements for a county-operated golf course.

Very truly yours

JIM  MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton